Welch, C. J.
The questions made and argued in the case are : 1. Were the original parties bound by the agreement recited in the record ? 2. Is the agreement of a nature to run with the laud? 3. Was it broken by the C., W. & .Z. R. R. Co. so as to become a mere right of action against that company, and cease to pass with the land.
1. Were the original parties bound by the agreement? We think they were. This was a proceeding under the statute, and the company had, as the statute requires, filed its “statement” therein, describing the “land and rights” of the defendant which it wished to condemn. That “ statement ” was surely open to amendment or modification by mutual consent, at any time during the trial. The agreement recited in the record is substantially such an amendment or modification. Whereas, by the original1 ‘ statement,” the company sought to condemn the land absolutely; by the modification they only sought to condemn the land, subject to the obligation to erect the fences and crossings. The jury were made aware of this agreement, and acted upon *246 and in view of it, as we must presume, for the record says that the defendant in the proceeding withdrew all claim for damage on account of these fences and crossings “ from the jury ”. The agreement, therefore, was a vital part of the proceediug, and forms a legitimate part of the record. The probate court is a court of record, and it follows, that this agreement has all the force and effect of a contract of record. It is suggested, rather than seriously insisted on, that the agreement is within the statute of frauds,, not having been signed by the parties, or their agents thereunto lawfully authorized. No case can be found where a contract of record has been held to be within the statute of frauds. The object of that statute is to substitute a higher for a lower order of evidence. But a record is the very highest order of evidence. It imports absolute verity, and the parties are estopped to deny its truth. Record evidence is surely not parol evidence. There is no parol evidence of this agreement. The only evidence of its existence is the highest order of written evidence. It is a record made by the proper officer of the-law, who for that purpose is at least as appropriately to be regarded as the agent of the parties, as would be an auctioneer, a broker, a partner, a member of a corporation, or a. sheriff making his return, in all of which cases the party is.held bound by the memorandum. If a record made by an. authorized public officer is not to be regarded as authorized by the parties thereto, then it is not true that a judgment, or recognizance is a contract of record. That they are contracts, and contracts of the highest dignity and solemnity, is well settled. But were the law otherwise, in this particular case there is enough to bind the company, in the fact that it afterward ratified the agency of the officer, by taking a judgment upon the verdict, paying the money into court, and taking possession of the property so condemned. The agreement is an element in the title under which the company claims. It cannot show its title without showing the contract at the same time.
2. Does the contract run with the land ? Undoubtedly it does. It was an agreement to erect structures upon the land *247 appropriated, and to keep them up so long as that was en joyed. It was in the nature of a charge upon that land, subjecting it to a servitude in favor of the estate from which it was to be taken. It went to lessen the value of the one and enhance the value of the other. The nature of the agreement, its qualification of the estate granted, its connection with the proceeding by which the title was acquired,, and the fact that the agreement was to be of perpetual obligation, utterly forbid the idea that it was intended to be a mere personal contract.
8. It is claimed, however, that the contract was broken by the company before its assignment of the road, and therefore never attached to the land in the hands of its assignee, the present defendant; Such would be the law of the case had the breach by the original company been complete and final. But this is not the fact. The contract is of continuing obligation, and the breach was necessarily only temporary and partial. The contract was, not only to put up the fences and crossings, but als.o to keep them up. On failure of the original company to put them up in a reasonable time, a right of action accrued against it in favor of the owner of the farm. In that action, however, he could only recover such damages as had then actually accrued to the use and enjoyment of the farm ; and the liability for these damages did not pass to the assignee of the company. But the obligation to keep up the fence still remained in force, and that obligation did pass to the assignee. For it must be observed, that so long as these structures remain unbuilt, the obligation to keep them up and in repair is tantamount to the obligation to build them. It is easy to be seen, therefore, that no recovery for full and final damages, in the nature of compensation, can properly be had. In actions where that description of damages is allowed, thfere will be found to exist at least one element which is wholly wanting here, namely, the necessity of allowing that form of compensation, in order to prevent a perpetuity of suits for an act or omission of the defendant which is lawful in itself, or which it .is not in his power to *248 remedy. Such is not the character of the present case. There is no danger of the defendant being harassed with perpetual suits. The defendant has only to put up the structures agreeably to contract, and there will be an end of suits. The true rule of damages, in a case like the present, 'is the amount of actual loss or injury occasioned to the use and enjoyment of the farm for want of the structures during the time the railroad was owned by the defendant. For such damages against the defendant it seems to us the petition makes a good case.
Judgment reversed, demurrer overruled, and cause remanded.
White, Day, McIlvaine and West, JJ., concurred.